UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GABRIEL PONCE BERMUDEZ,

   Petitioner,

v.          Case No. 2:26-cv-1726-JES-KRH

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

   Respondents.

_____/

## OPINION AND ORDER

Petitioner Gabriel Ponce Bermudez, an immigration detainee currently held at Florida Soft Side South Detention Facility, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents have filed a response to the petition .  (Doc. 4).  Upon review of the parties' filings, the Court finds that a reply is unnecessary and that the petition must be granted.

## I.   Background

Ponce Bermudez, a citizen of Cuba, entered the United States on August 15, 1995.  (Doc. 4-1 at 19). On November 8, 2004, he was convicted of criminal activity including attempted burglary, attempted battery on a law enforcement office, and theft of a motor vehicle.  (Id. at 15).  An immigration judge ordered his removal from the United States to Cuba on October 27, 2011.  (Id.) Following that order, Ponce Bermudez was released under an order

of supervision.   (Id.)   On October 30, 2025, Immigration and Customs Enforcement (ICE) revoked Ponce Bermudez's order of supervision, and he was placed in immigration custody.  (Doc. 4 at 2).   Ponce Bermudez was served with a notice of removal to Mexico on December 12, 2015.   (Id.)

On January 31, 2026, ICE transported Ponce Bermudez to El Paso, Texas near the border with Mexico, but he refused removal to Mexico.   (Doc. 4 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).   The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Ponce Bermudez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.   In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."   533 U.S. at

2

700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  Id. at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.[1]

Here, there is no dispute that Ponce Bermudez has been in ICE custody for more than six months following his latest order of removal.  Respondents contend that Ponce Bermudez is not entitled to release because 90 days after his detention, ICE attempted a third-country removal to Mexico but he thwarted ICE's efforts at removal by failing to voluntarily depart.

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).   The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)).   More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Ponce Bermudez's actions implicated § 1231(a)(1)(C).   They offer the declaration of Deportation Officer Darion Hernandez who states that "[on] January 31, 2026, petitioner was transferred to El Paso, Texas to execute the removal order to third country (Mexico). On February 16, 2026,

4

Petitioner refused removal to Mexico.  He was then returned to Florida Soft Sided Facility-South."  (Doc. 4-2 at 2). It appears from Officer Hernandez's declaration that ICE merely transported Ponce Bermudez to the Mexican border and asked him to voluntarily depart, which he refused to do.  Respondents do not allege that Mexico actually agreed to accept Ponce Bermudez or that ICE even had an approved plan for removal to Mexico that he thwarted in some way.  Further, assuming that Mexico was willing to accept Ponce Bermudez (notwithstanding his criminal record), Officer Hernandez does not explain why ICE could not or did not thereafter seek travel documents or otherwise plan for his removal to Mexico in a different way, such as a charter flight.  In fact, Respondents provide no evidence suggesting that ICE actually communicated with Mexico specifically regarding Ponce Bermudez.  Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country.  Without more, the Court cannot find that Ponce Bermudez's actions in Texas prevented his removal and reset Zadvydas' 180-day clock.  The Court's confidence in Ponce Bermudez's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents admit they do not have.  See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's

conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents present no evidence showing any significant steps taken to remove Ponce Bermudez to Cuba or another country. Instead, the only effort at removal was a trip to the United States-Mexico border in an apparent attempt to coerce Ponce Bermudez into voluntarily departing to a country of which he is not a citizen. But detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart by walking across the international border does not constitute removal; rather, it is an action designed to lead to the type of indefinite detention that Zadvydas sought to prevent. The Court also notes that ICE waited 90 days to transport Ponce Bermudez to the Mexican border and that an additional 147 days have since passed. Basically, ICE has not presented evidence showing that it even attempted (or is still attempting) to remove Ponce Bermudez within the 90 days contemplated by 8 U.S.C. § 1231(a)(1)(A).

Based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that Ponce Bermudez will be removed in the reasonably foreseeable future. Respondents have had almost 15 years—and more than six months since

6

his present detention—to remove Ponce Bermudez and are still unable to articulate a specific plan for his removal to any country. And while there may be some possibility that Mexico will eventually accept Ponce Bermudez, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added) (quotations omitted).

Therefore, Ponce Bermudez is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If he fails to comply with the conditions of release, Ponce Bermudez may be subject to criminal penalties—including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Ponce Bermudez to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1. Gabriel Ponce Bermudez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

7

2.   Respondents shall release Ponce Bermudez within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 12, 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8